UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAMEH HUSSEIN,<br><br>            Plaintiff,<br><br>    v.<br><br>ROBIN BARRETT, et al.,<br><br>            Defendants. | Case No.11-cv-05317-JST<br><br>**ORDER**<br><br>Re: ECF Nos. 67, 89, 90 |

Sameh Hussein seeks *de novo* review of the denial of his application for naturalization filed November 2, 2011, pursuant to 8 U.S.C. § 1421(c). This case is now before the Court on remand from the Court of Appeals, which set aside this Court's judgment and remanded for further proceedings. ECF No. 67. Having considered the Court of Appeals' opinion and the parties' post-remand briefing, the Court will deny the petition because Petitioner has failed to satisfy his burden of establishing good moral character.

## I.    BACKGROUND

Following a trial on the merits, this Court denied Petitioner Sameh Hussein's petition seeking *de novo* review of the United States Citizenship and Immigration Services' ("USCIS") denial of his naturalization application. ECF No. 63. The basis for this Court's denial was its conclusion that Mr. Hussein failed to satisfy the good moral character requirement. Id. The Court found that Mr. Hussein lied under oath about his marital status during a custody proceeding in the Sacramento Superior Court because he thought the misrepresentation would benefit him in that dispute. Id. The Court also found that Mr. Hussein repeatedly lied to law enforcement officials about his marital status for the same reason. Id. Based on these misrepresentations, the Court concluded that Mr. Hussein had committed an unlawful act (perjury) that adversely reflected on

his moral character.  Id.  The Court also noted that Mr. Hussein had not submitted any evidence of extenuating circumstances that would justify the perjury.  Id.

The Court of Appeals subsequently held that this Court erred in two respects: first, by failing to make specific findings as to whether Mr. Hussein's false statement to the Sacramento Superior court was material to the custody proceedings, and second, by failing to consider all relevant factors regarding Mr. Hussein's moral character.  ECF No. 67.  With respect to the first error, the Court of Appeals noted that Mr. Hussein's false statement to the Sacramento Superior Court could not be perjurious if it was not material to the custody proceeding.  Id.  With respect to the second error, the Court of Appeals held that commission of an unlawful act under 8 C.F.R. § 316.10(b)(3)(iii) is not a *per se* bar to naturalization, and therefore this Court was required to consider all evidence relevant to Mr. Hussein's moral character, including any counterbalancing factors.  Id.  The Court of Appeals vacated the order lie denying Mr. Hussein's naturalization application and remanded to this Court for further proceedings.  Id.

After remand to this Court, the parties agreed that no factual issues are in dispute and that no additional discovery is needed.  ECF No. 84.  Each party submitted a post-trial brief and a reply in which they addressed the remaining legal issues.  ECF Nos. 89-92.

## II.    LEGAL STANDARD

In order to become a naturalized citizen, an applicant must demonstrate that they satisfy the statutory criteria of the Immigration and Naturalization Act, including the requirement that the applicant "has been and still is a person of good moral character" during the statutorily defined period of residency.  8 U.S.C. § 1427(a); United States v. Dang, 488 F.3d 1135, 1138–39 (9th Cir. 2007).  The statutory period for good moral character begins five years before the naturalization application is filed and continues until the applicant becomes a U.S. citizen.  8 U.S.C.A. § 1427(a)(3).  An applicant "bear[s] the burden of establishing by a preponderance of the evidence that he or she meets all of the requirements for naturalization."  United States v. Hovsepian, 359 F.3d 1144, 1168 (9th Cir. 2004) (quoting 8 C.F.R. § 316.2(b)).

Section 1101(f) governs the determination of good moral character.  See 8 U.S.C. §

1101(f). The statute lists specific characteristics that preclude a finding of good moral character and act as a *per se* bar to naturalization. 8 U.S.C. § 1101(f); Torres-Guzman v. INS, 804 F.2d 531, 533 (9th Cir. 1986). The statute also contains the following "catch-all" provision: "The fact that any person is not within any of the foregoing classes shall not preclude a finding that for other reasons such person is or was not of good moral character." 8 U.S.C. § 1101(f); Dang, 488 F.3d at 1139. "If the person has not committed acts bringing them within the enumerated categories, and instead, the question is whether the person meets the catch-all provision, the adjudicator must consider all of the petitioners' evidence on factors relevant to the determination of good moral character." ECF No. 67 (citing Torres-Guzman, 804 F.2d at 534) (explaining that the fact finder must "weigh and balance the favorable and unfavorable facts or factors, reasonably bearing on character, that are presented in evidence"). Those factors include education, family background, employment history, financial status, and lack of criminal record. Id. at 533.

An agency regulation, Section 316.10, also offers "guidance to officials making moral character determinations." Dang, 488 F.3d at 1139; 8 C.F.R. § 316.10. That regulation provides that moral character determinations are made "on a case-by-case basis taking into account the elements enumerated in this section and the standards of the average citizen in the community of residence." Id. § 316.10(a)(2). That regulation further provides that, "[u]nless the applicant establishes extenuating circumstances, the applicant shall be found to lack good moral character if, during the statutory period, the applicant . . . [c]ommitted unlawful acts that adversely reflect upon the applicant's moral character . . . " 8 C.F.R. § 316.10(b)(3).

### III.    ANALYSIS

On remand, the government argues that Mr. Hussein committed three unlawful acts during the statutory period:[1] (1) perjury and/or attempted perjury under California law; (2) making a false

---

[1] Because Mr. Hussein filed his naturalization application on September 15, 2005, the statutory period began on September 15, 2000 and runs to the present day. 8 U.S.C.A. § 1427(a)(3). Mr. Hussein complains that USCIS unreasonably extended this statutory period through its own delay in processing his application, but he does not contest this calculation of the statutory period. ECF No. 90 at 8, n. 1.

statement to the police in violation of the Elk Grove Municipal Code; and (3) perjury under federal law. ECF No. 91 at 22.[2] The government also contends that each of these unlawful acts adversely reflects adversely on Mr. Hussein's moral character, that there are no extenuating circumstances that lessen his guilt, and that positive factors related to Mr. Hussein's moral character do not outweigh these unlawful acts.

Mr. Hussein responds that he did not commit any of these unlawful acts and/or that the laws prohibiting the alleged conduct are unconstitutionally vague and overbroad. ECF No. 90 at 8-23. Even if he did commit an unlawful act, he argues that "it is clearly explained by the extenuating circumstances and does not adversely reflect on his moral character." ECF No. 92 at 5. Mr. Hussein also contends that, "[a]fter considering the extenuating circumstances and weighing them along with the positive factors in this case, it is clear that [he] has established that he is a person of good moral character." Id.

The Court now addresses whether Mr. Hussein has committed any unlawful acts that adversely reflect on his moral character, whether any extenuating circumstances mitigate Mr. Hussein's guilt for those unlawful acts, and whether favorable factors related to Mr. Hussein's moral character outweigh those unlawful acts.

**A.   Unlawful Acts**

**1.   Perjury and/or Attempted Perjury under California Law**

First, the government argues that Mr. Hussein committed perjury and/or attempted perjury under California law when he lied about his marital status in a sworn declaration submitted to the Sacramento Superior Court during a custody dispute. ECF No. 89 at 8-12.

---

[2] The government raises several new theories regarding unlawful acts allegedly committed by Mr. Hussein that were not presented before this Court at trial or on appeal to the Ninth Circuit. However, Hussein does not raise a waiver argument, and the Court concludes that such an argument would fail. The Supreme Court has repeatedly noted its "judicial insistence on strict compliance with the statutory conditions precedent to naturalization," and this Court's "task is to assure compliance with the particular prerequisites to [naturalization]." Fedorenko v. United States, 449 U.S. 490, 506 (1981) (citing U.S. v. Ginsberg, 243 U.S. 472, 474-475 (1917)). Accordingly, the Court considers all possibly unlawful acts, whether previously raised by the government or not.

"Under California law, the elements of perjury are: 'a willful statement, under oath, of any material matter which the witness knows to be false.'" Chein v. Shumsky, 373 F.3d 978, 983–84 (9th Cir. 2004) (quoting Cabe v. Sup. Ct., 63 Cal. App. 4th 732 (1998)); Cal. Penal Code § 118(a). A statement is material if it "could probably have influenced the outcome of the proceedings." Chein, 373 F.3d at 984 (internal quotation marks omitted). "[W]hen applying the materiality test, California law focuses not on whether, as a matter of historical fact, the false statement probably did influence the outcome of the proceedings, but instead on whether the false statement, at the time it was made, had the tendency to probably influence the outcome of the proceedings." Id.

Attempted perjury is also a crime under California law. People v. Post, 94 Cal. App. 4th 467, 480–82 (2001). "An attempt to commit a crime is comprised of 'two elements: a specific intent to commit the crime, and a direct but ineffectual act done toward its commission.'" People v. Medina, 41 Cal. 4th 685, 694 (2007) (quoting Cal. Penal Code § 21a). A defendant acts with the requisite specific intent if he has "the intent to engage in the conduct and/or bring about the consequences proscribed by the attempted crime." People v. Toledo, 26 Cal. 4th 221, 230 (2001). "Other than forming the requisite criminal intent, a defendant need not commit an element of the underlying offense." Id. A defendant is guilty of attempt if he "has the requisite criminal intent but 'elements of the substantive crime [are] lacking' due to 'circumstances unknown' to him." People v. Rizo, 22 Cal. 4th 681, 685 (2000) (quoting People v. Rojas, 55 Cal.2d 252, 257–258 (1961)).

At trial, Mr. Hussein admitted that he submitted a declaration to the Sacramento Superior Court in which he swore under penalty of perjury that he was married to Stacey Mabrey. Trial Tr. at 91-93. That statement was false because, as this Court previously found, Mr. Hussein and Mabrey were never married. ECF No. 63 at 6. This Court also found "that it is more likely than not that Petitioner knowingly misrepresented to the Sacramento Superior Court that he was married to Mabrey because he perceived the misrepresentation would benefit him in his custody dispute." ECF No. 63 at 6.

The issue presently before this Court is whether Mr. Hussein's false statement under oath

was material to the custody proceeding. The government argues that the statement was material because it allowed the state court to presume that Mr. Hussein was the father of his children under California Family Code § 7611(a). Under that statutory provision, a person is presumed to be the parent of a child if he is or was married to the child's mother and the child was born during the marriage. Cal. Fam. Code § 7611(a). Mr. Hussein argues that the statement was not material because his parentage was not disputed and his marital status was irrelevant to the child custody proceeding, which turned on the best interests of the child. ECF No. 92 at 7-8.

The Court concludes that Mr. Hussein did not commit perjury because the false statement about his marital status was not material to the custody proceeding. Although that statement allowed Mr. Hussein to benefit from a presumption that he was the father, it was not likely to influence the outcome of the proceedings because his parentage was not disputed and he could have established parentage through other means. For example, as the government itself notes, Mr. Hussein likely could have established his parentage under § 7611(d) because he received the children into his home and openly held out the children as his own. ECF No. 89 at 9, n. 2; Cal. Fam. Code § 7611(d). Alternatively, Mr. Hussein could have successfully established his parentage through a voluntary declaration of paternity. See Cal. Fam. Code § 7573. Although Mr. Hussein's parentage was a necessary predicate determination, the outcome of the child custody proceeding ultimately turned on the best interests of the children, and that determination was unaffected by Mr. Hussein's false statement about his marital status. See Cal. Fam. Code §§ 3040, 3011. Therefore, Mr. Hussein did not commit perjury.

Mr. Hussein did, however, commit attempted perjury. Even though his false statement was not actually material to the custody proceeding, this Court has already found that Mr. Hussein knowingly made the false statement "because he perceived the misrepresentation would benefit him in his custody dispute." ECF No. 63 at 6. That is, Mr. Hussein acted with the specific intent to commit perjury and performed the very acts necessary to do so. It does not matter that Mr. Hussein's attempt was ineffectual in that it was unlikely to actually influence the custody proceedings: "[A] defendant is guilty of an attempt where he has the specific intent to commit the

1   substantive offense and, *under the circumstances as he reasonably sees them*, does the acts
2   necessary to consummate the substantive offense." People v. Wright, 105 Cal. App. 3d 329, 332
3   (Ct. App. 1980) (emphasis added).  Nor does it matter that the element of materiality is missing.
4   Id.; see also Toledo, 26 Cal. 4th at 230.

5   The Court concludes that Mr. Hussein committed attempted perjury under California law.

### 2.   Violation of the Elk Grove Municipal Code

Next, the government argues that Mr. Hussein violated the Elk Grove Municipal Code when he told a detective from the Elk Grove Police Department that Mabrey was his wife.  ECF No. 89 at 12.

Section 9.04.101 of the Elk Grove Municipal Code provides that "[i]t is unlawful for any person to knowingly falsify or conceal any fact, or make any false or fraudulent statement or misrepresentation in any matter or proceeding within the jurisdiction of any department or agency of the City."  Any person who knowingly violates this section is guilty of a misdemeanor.  See id.

At trial, Mr. Hussein admitted that that he referred to Mabrey as his wife when talking to Detective Ledbetter from the Elk Grove Police Department.  Trial Tr., ECF No. 60 at 103.  Again, this statement was false because Mr. Hussein and Mabrey were never married.  ECF No. 63 at 6. This Court found that Mr. Hussein "misrepresented to law enforcement that he was married because he desired to avoid embarrassment, and perhaps also because he thought it would help his cause."  ECF No. 63 at 5.

Mr. Hussein nonetheless argues that he did not violate the Elk Grove Municipal Code because his statement was not false, but rather "a commonly acceptable reference given their relationship."  ECF No. 92 at 9.  This argument fails.  Even assuming that referring to Mabrey as his wife conformed with community standards, this argument confuses the standard for the good moral character determination with the elements of the underlying unlawful act.  Although community standards might bear on whether an unlawful act adversely reflects on the applicant's character, they do not help this Court determine whether Mr. Hussein violated this provision of the Municipal Code in the first place.  Section 9.04.101 says nothing about community standards; it

simply prohibits making false statements to City officials. Mr. Hussein testified, and this Court subsequently found, that he was never married to Mabrey. Trial Tr. at 41, 181; ECF No. 63 at 6. As a result, Mr. Hussein's statement to the Elk Grove Police Department was false.

Mr. Hussein also argues that, even if this statement was false, it did not take place in the context of a "matter or proceeding" within Elk Grove's jurisdiction. ECF No. 90 at 16. That argument also fails. Mr. Hussein admitted at trial that he contacted the Elk Grove Police Department as part of his complaint against Mabrey to seek the return of the children from Qatar. Trial Tr., ECF No. 60 at 101-102. As a result, the false statement was made in the context of a "matter or proceeding" within the jurisdiction of the Elk Grove Police Department, regardless of which government entity ultimately brought charges against Mabrey. See United States v. Rodgers, 466 U.S. 475, 479 (1984) (holding that "[a] criminal investigation surely falls within the meaning of 'any matter'" as that phrase is used in 18 U.S.C. § 1001, a federal statute that prohibits knowingly making a false statement "in any matter within the jurisdiction of the [United States]").

Finally, Mr. Hussein argues that he cannot be held in violation of Section 9.04.101 because it is unconstitutionally overbroad and void for vagueness. ECF No. 90 at 17-20. Specifically, he argues that the provision "criminalizes speech that is protected by the First Amendment" and "does not provide adequate notice of the criminalized behavior" as required by the Due Process Clause. ECF No. 90 at 17. Mr. Hussein does not argue that Section 9.04.101 is unconstitutional as applied to his conduct; rather, he argues that it is "unconstitutional on its face." Id.

Section 9.04.101 is not unconstitutionally overbroad. "[A] state statute should not be deemed facially invalid unless it is not readily subject to a narrowing construction by the state courts and its deterrent effect on legitimate expression is both real and substantial." Erznoznik v. City of Jacksonville, 422 U.S. 205, 216 (1975). In other words, Mr. Hussein must show that there is "a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court." Members of City Council of City of Los Angeles v. Taxpayers for Vincent, 466 U.S. 789, 799-801 (1984). He cannot do so because the First Amendment does not protect knowingly making a false statement to authorities. See

8

1   Garrison v. State of La., 379 U.S. 64, 74-75 (1964) ("[T]he knowingly false statement and the
2   false statement made with reckless disregard of the truth, do not enjoy constitutional protection.");
3   see also, e.g., Lefebvre v. Lefebvre, 199 Cal. App. 4th 696, 703-706 (2011) ("Filing a false
4   criminal complaint is an illegal activity, not a constitutionally protected exercise of the right of
5   petition or free speech.").

6   Nor is Section 9.04.101 void for vagueness. "To be struck down for vagueness, a statute
7   or regulation must fail 'to give a person of ordinary intelligence fair notice that his contemplated
8   conduct' is forbidden." Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris, 729 F.3d
9   937, 946 (9th Cir. 2013) (quoting Donovan v. Royal Logging Co., 645 F.2d 822, 831 (9th Cir.
10  1981)). Because the Elk Grove ordinance does not involve First Amendment freedoms, as
11  explained above, Hussein's challenge "must be examined in the light of the facts of the case at
12  hand." Id. (quoting United States v. Mazurie, 419 U.S. 544, 550 (1975)). Section 9.04.101
13  provides fair notice to a person of ordinary intelligence that Mr. Hussein's conduct—i.e.,
14  knowingly making a false statement to an Elk Grove police officer while lodging a criminal
15  complaint—is prohibited. It is notable that nearly identical language is found in a federal statute,
16  18 U.S.C. § 1001, and that statute has repeatedly survived constitutional challenges on vagueness
17  grounds. See 18 U.S.C. § 1001(a) (making it illegal to, "in any matter within the jurisdiction of
18  the executive, legislative, or judicial branch of the Government of the United States, knowingly
19  and willfully . . . make[] any materially false, fictitious, or fraudulent statement or
20  representation"); United States v. Matanky, 482 F.2d 1319, 1322 (9th Cir. 1973) ("[W]e find no
21  vagueness problems with section 1001, either as construed or as applied to this case."); United
22  States v. Gibson, 409 F.3d 325, 334 (6th Cir. 2005) (holding that the language in 18 U.S.C. § 1001
23  is "not so indefinite as to be void for vagueness").

24  The Court concludes that Mr. Hussein violated section 9.04.101 of the Elk Grove
25  Municipal Code.

### 3.     Perjury under Federal Law

27  Finally, the government argues that Mr. Hussein committed perjury under federal law

9

when he falsely stated in his 2005 naturalization application that he had been living with his United States citizen spouse, Debra Hawley, for the three years prior to his application. ECF No. 89 at 13-15.

A person commits perjury under federal law if, "in any declaration, certificate, verification, or statement under penalty of perjury," he "willfully subscribes as true any material matter which he does not believe to be true." 18 U.S.C. § 1621(2).

In 2005, Mr. Hussein signed and submitted his naturalization application, certifying "under penalty of perjury under the laws of the United States of America, that this application, and the evidence submitted with it, are all true and correct." Joint Ex. 2, Part 11; Trial Tr., ECF No. 60 at 77-79. In his application, Mr. Hussein asserted that he was eligible for naturalization based on his marriage to a United States citizen. Joint Ex. 2, Part 2. To be eligible for naturalization on that basis, the applicant must have "been living in marital union with the citizen spouse" during the three years immediately preceding the date of filing his application. 8 U.S.C. § 1430(a). Mr. Hussein checked Box B, which states, "I have been married to and living with the same U.S. citizen for the last 3 years." Joint Ex. 2, Part 2. Later in his application, Mr. Hussein identified that U.S. citizen spouse as Debra Hawley. Id., Part 8. However, Mr. Hussein testified at trial that he had stopped living with Hawley in 2003. Trial Tr., ECF No. 60 at 28-30. Another witness, Mr. Sherif Aziz, similarly testified that Mr. Hussein was separated from Hawley and living with Stacey Mabrey as of December 2003. Id. at 133-34. Therefore, based on his own undisputed testimony, Mr. Hussein's statement under penalty of perjury that he had been living with his U.S. citizen spouse for the three years prior to his 2005 naturalization application was knowingly false.

Mr. Hussein responds that this false statement was not material to his naturalization application because he would have qualified for naturalization on a ground independent of his marriage to and cohabitation with Hawley—namely, his own legal permanent residence in the United States for the preceding five-year period. ECF No. 90 at 21. In other words, Mr. Hussein could have checked Box A, which states, "I have been a Lawful Permanent Resident of the United States for at least 5 years," and qualified for naturalization on that basis. Joint Ex. 2, Part 2.

1    The Court agrees that Mr. Hussein's false statement about cohabiting with Hawley was not
2    material to his naturalization application, and therefore not perjurious.  When Mr. Hussein applied
3    for naturalization in 2005, he had been a lawful permanent resident for more than five years and,
4    as a result, he was eligible for citizenship regardless of whether he was married to or cohabiting
5    with Hawley.  See 8 U.S.C. § 1427.  Moreover, Mr. Hussein did not even receive an interview
6    based on his 2005 application until 2010, and at that point the basis for his eligibility was changed
7    to reflect his divorce from Hawley.  Joint Ex. 2, Part 2; Trial Tr., ECF No. 60 at 161-64.

8    The Court concludes that Mr. Hussein did not commit perjury in violation of 18 U.S.C. §
9    1621.

                                             * * *

10   The Court concludes that Mr. Hussein committed attempted perjury under California law
11   and violated Section 9.04.101 of the Elk Grove Municipal Code.  This Court previously found that
12   Mr. Hussein intentionally made these false statements to government entities because he thought
13   that it would benefit him in the child custody dispute.  ECF No. 63 at 5-6.  When evaluated from
14   the perspective of the average citizen in the community of residence, these unlawful acts adversely
15   reflect on Mr. Hussein's moral character.

### B.    Extenuating Circumstances

Mr. Hussein argues that the following extenuating circumstances justify his unlawful acts: (1) the reasons why Mr. Hussein began referring to Ms. Mabrey as his wife in the first instance; (2) the fact that she went to Qatar with their three children for a few months and withheld their custody from Qatar for years; and (3) the fact that a California judge found that it was in the best interests of their three children that Mr. Hussein retain primary physical custody of them upon her return from Qatar.[3]  ECF No. 90 at 24-25.

"The narrow 'extenuating circumstances' exception, applicable to having failed to support

---

[3] Mr. Hussein also argues that he "checked the wrong box on his citizenship application because he was not represented by counsel when he filed it."  ECF No. 90 at 24.  Because the Court concludes that this conduct did not constitute an unlawful act, it need not address potentially mitigating circumstances related to that conduct.

11

dependents or engaged in an extramarital affair, as well as to the commission of a crime . . . focuses on circumstances during the statutory period that may 'palliate or lessen' an offender's guilt for an offense." United States v. Teng Jiao Zhou, 815 F.3d 639, 644 (9th Cir. 2016) (quoting United States v. Suarez, 664 F.3d 655, 662 (7th Cir. 2011)). Extenuating circumstances are not "a post-naturalization retrospective on the person, his achievements, or the unfortunate effect that denaturalization will surely have." Id. at 644. Rather, extenuating circumstances "must pertain to the reasons showing lack of good character, including acts negating good character." United States v. Jean-Baptiste, 395 F.3d 1190, 1195 (11th Cir. 2005).

The Court reaffirms its earlier conclusion that Mr. Hussein "has not submitted any evidence of extenuating circumstances for his misrepresentations." ECF No. 63 at 9. Although the fact that Mr. Hussein was eventually awarded physical custody of his children suggests that denying his naturalization application will have an unfortunate effect on his family, that post-hoc consideration in no way palliates or lessens his guilt for lying to both the Sacramento Superior Court and an Elk Grove police detective. Nor does Mr. Hussein's professed habit of referring to Mabrey as his wife in *social* settings to avoid embarrassment in his religious community somehow excuse his deliberate dishonesty with *public* officials and institutions. The fact that Mabrey had taken the children to Qatar does not explain the unlawful acts, either, because nothing in the record suggests that the police would have responded differently based on the marital status of the person lodging the complaint.

The Court concludes that Mr. Hussein has failed to demonstrate extenuating circumstances.

### C. Other Relevant Considerations

Because Mr. Hussein's conduct does not fall within one of the *per se* bars, the Court must consider any counterbalancing factors that bear on his moral character, including school record, family background, employment history, financial status, and lack of criminal record. See Torres-Guzman v. I.N.S, 533–34 (9th Cir. 1986).

Mr. Hussein has submitted evidence of counterbalancing factors. He has been living in the

United States for more than twenty years; he has a college degree in math and physics; and he has been steadily employed. Trial Tr., ECF No. 60 at 15-25. He has primary physical custody over his three children, one of whom has Down's Syndrome and a heart defect. Id. at 47-50. In his spare time, Mr. Hussein volunteers with the Boy Scouts and the Islamic Society of Santa Rosa. Id. at 25-27. He has never been arrested, and he has no criminal convictions. Id. at 128.

The Court weighs these factors against its prior finding that Mr. Hussein intentionally made false statements to government entities because he thought that it would benefit him in the child custody dispute; that he committed attempted perjury; and that he misrepresented the facts to this Court in the hearing on the present petition, ECF No. 63 at 8.

Given his persistent refusal to act truthfully in dealing with law enforcement agencies and the courts, the Court concludes that Mr. Hussein has not met his burden to establish good moral character.

## CONCLUSION

The Court denies the petition for *de novo* review of USCIS's denial of the application for naturalization.

IT IS SO ORDERED.

Dated: March 27, 2017

_____
JON S. TIGAR
United States District Judge

13